IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OSCAR VARGAS, | ) | |
| Petitioner, | ) | Civil Action No. 14-161 Erie |
| | ) | |
| v. | ) | District Judge Cathy Bissoon |
| | ) | Magistrate Judge Susan Paradise Baxter |
| JOHN WETZEL, et al., | ) | |
| Respondents. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I.     RECOMMENDATION

It is respectfully recommended that the petition for a writ of habeas corpus filed by Petitioner,

Oscar Vargas, be denied and that a certificate of appealability be denied.


## II.     REPORT

### A.     Relevant Background[1]

In 2006, Petitioner was charged with two counts of involuntary deviate sexual intercourse and

one count each of rape, indecent assault and corruption of minors. The factual averments of the Criminal

Information alleged that in separate incidents in 1998 and 1999, Petitioner placed his penis into the anus

and mouth of his step-daughter, who is referred to herein as "M.L." At the time of the charged assaults,

M.L. was age five and six. M.L. first reported her allegations against Petitioner in 2006, when she was

12 years old.

In July 2006, following a referral from the Office of Children & Youth Services, M.L. was

examined by Dr. Justine M. Schober, a pediatric urologist. Dr. Schober's subsequent report explained

that M.L. had scarring consistent with sexual trauma.

---

[1]     Respondents have filed hard copies of the transcripts and state court records. Copies of the documents from the docket of the Court of Common Pleas of Erie County are indexed and numbered 1 through 107 and are cited herein as "CP Dkt. ___ ." Some appellate documents have no index number.

Petitioner retained Keith H. Clelland, Esq., to represent him. As part of an omnibus pre-trial motion, Clelland sought to discover any photographs that had been taken as part of Dr. Schober's examination of M.L. He also requested that the defense be permitted to have M.L. examined by its own expert. After learning that Dr. Schober had not taken any photographs during her examination (1/4/07 Hr'g Tr. at 12-14), Clelland moved to compel an independent medical examination of M.L. (CP Dkt. 16). The trial court initially granted the defense's request, but after a conference on the issue it ordered that Dr. Schober re-examine M.L. and take photographs of the examination that would be made available to the defense. Following a second examination by Dr. Schober, photographs were sent to Petitioner's defense expert, Dr. Stephen R. Guertin, for review.

Petitioner's first trial commenced in January 2008. It ended in a mistrial after the jury was unable to reach a unanimous verdict. The court scheduled Petitioner's retrial for the March 2008 term of court. After Clelland withdrew his representation of Petitioner, the court appointed Assistant Public Defenders Nicole Sloane, Esq., and Richard Gilmore, Esq., to represent him and it continued Petitioner's trial to the May 2008 term of court.

On March 6, 2008, the defense requested that the court continue the May trial date so that new counsel would have sufficient time to review the transcripts of the first trial. (CP Dkt. 36). The court denied that request. In April, the defense again moved for a continuance of the trial date. In support, Attorney Sloane noted that the transcription of the first trial was not completed until April 15, 2008. She also explained that Dr. Guertin would not be available to testify during most of the May term. (CP Dkt. 39). On April 17, 2008, the trial court issued an order denying the motion for a continuance. It held that Dr. Guertin could be called out of order if needed. (CP Dkt. 40).

Petitioner's trial began on May 13, 2008. Dr. Guertin testified for the defense via video on the first day of trial, after M.L. and two other prosecution witnesses had testified. He stated that in his expert

opinion, after having examined the colposcopic photographs provided by Dr. Schober, M.L. showed no evidence of the trauma she alleged. Dr. Schober, in contrast, subsequently testified for the prosecution that M.L. had scarring consistent with sexual trauma.

After three days of testimony, the jury convicted Petitioner on all charges. The court sentenced him to a term of 63-126 months of imprisonment, to be followed by 60 months of probation. In 2010, the Superior Court of Pennsylvania denied Petitioner's direct appeal and affirmed his judgment of sentence. Commonwealth v. Vargas, No. 1628 WDA 2008, slip op. (Pa.Super.Ct. Apr. 13, 2010) ("Vargas I") (CP Dkt. 74).

Petitioner subsequently filed a *pro se* motion for collateral relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.*(CP Dkt. 75). The PCRA court appointed Jeffrey Veitch, Esq., to represent him. An evidentiary hearing on Petitioner's claims was scheduled for October 2012. However, no testimony was taken and oral argument on Petitioner's claims was held instead.

The PCRA court denied Petitioner's request for relief in an Opinion dated February 12, 2013. Commonwealth v. Vargas, No. 2558-2006, slip op. (C.P. Erie. Feb. 12, 2013) ("Vargas II") (CP Dkt. 88). Eric Hackwelder, Esq., was appointed to represent Petitioner in his appeal but Petitioner waived his right to counsel and proceeded *pro se*. On April 29, 2014, the Superior Court issued a Memorandum in which it affirmed the PCRA court's decision to deny Petitioner relief. Commonwealth v. Vargas, No. 504 WDA 2013, slip op. (Apr. 29, 2014) ("Vargas III").

After the Superior Court denied his PCRA appeal, Petitioner filed with this Court a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. [ECF No. 1]. This statute gives federal courts jurisdiction to consider a state prisoner's federal constitutional challenges to the validity of his or her state sentence. 28 U.S.C. § 2254(a). Errors of state law are not cognizable. Id. See, e.g., Estelle v.

McGuire, 502 U.S. 62, 67-68 (1991). Petitioner carries the burden of proving that he is entitled to the writ. See, e.g., Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

Petitioner raises the following five claims for relief:

**Claim 1:** He was denied due process of law where the trial court failed to allow the defense an independent medical evaluation of M.L.

**Claim 2:** He was denied due process of law where the trial court denied his request for a continuance of his May 2008 trial date.

**Claim 3:** He was denied due process of law where the trial court granted the Commonwealth's motion to present evidence of prior crimes of violence between Petitioner and his wife and stepchildren.

**Claim 4:** He was denied his right to effective assistance of counsel in violation of his Sixth and Fourteenth Amendment rights because his counsel failed to:

    **(a)** object to the admission of M.L.'s recorded statement on the grounds that it violated the Confrontation Clause as enunciated in Crawford v. Washington, 541 U.S. 36 (2004).

    **(b)** cross-examine M.L. concerning the recorded statement; and,

    **(c)** object and/or raise a challenge on direct appeal to the misleading and prejudicial photographs utilized by Dr. Schober.

**Claim 5:** "In rejecting Petitioner's state court request for post-conviction relief based upon newly discovered evidence, the state PCRA court denied relief in a manner that failed to comport with the demands of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, resulting in Petitioner being denied a fair and meaningful opportunity to assert his state-created right to demonstrate the injustice of his conviction."

[ECF No. 1 at 9-20].

Respondents filed their answer [ECF No. 12], to which Petitioner filed a reply (which he called a memorandum of law) [ECF No. 15].

## B.    Standard of Review

In describing the role of federal habeas proceedings, the United States Supreme Court noted:

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence.... The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials.

Barefoot v. Estelle, 463 U.S. 880, 887 (1983). Habeas corpus is a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (quoting Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment)).

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which amended 28 U.S.C. § 2254. AEDPA imposes "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Pinholster, 563 U.S. at 181 (internal quotation marks and citations omitted). That standard of review is codified at 28 U.S.C. § 2254(d) and it provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).[2]

---

[2]     "'[C]learly established Federal law' for purposes of § 2254(d)(1) includes only 'the holdings, as opposed to the dicta, *of [the Supreme] Court's decisions.*'" White v. Woodall, 134 S.Ct. 1697, 1702 (2014) (emphasis added) (quoting Howes v. Fields, 565 U.S. —, 132 S.Ct. 1181, 1187 (2012), which quoted Williams, 529 U.S. at 412). The Supreme Court "has repeatedly emphasized" that "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court'" under § 2254(d)(1). Glebe v. Frost, — U.S. —, 135 S.Ct. 429, 431 (2014) (per curiam) (citing Lopez v. Smith, 574 U.S. —, 135 S.Ct. 1, 4-5 (2014) (per curiam)). In addition, "Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced.'" Woodall, 135 S.Ct. at 4 (quoting Marshall v. Rodgers, 569 U.S. —, 133 S.Ct. 1446, 1451 (2013) (per curiam)). "Of course, a state court's resolution of a question that the Supreme Court has not resolved can be neither contrary to, nor an unreasonable

A state court decision is "contrary to … clearly established Federal law, as determined by the Supreme Court[,]" 28 U.S.C. § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," Williams v. Taylor, 529 U.S. 362, 405 (2000), or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent," id. at 406. Few adjudications by state courts fall within § 2254(d)(1)'s "contrary to" clause.

Most state court's adjudications must be evaluated under § 2254(d)(1)'s "unreasonable application" clause. The petitioner's burden under this clause is also very difficult to meet. It requires that "[i]f the state court decision identifies the correct governing legal principle in existence at the time, a federal court must assess whether the decision unreasonably applies that principle to the facts of the prisoner's case." Pinholster, 563 U.S. at 182 (quotation marks omitted). The Supreme Court instructed:

> It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. See [Lockyer v. Andrade, 538 U.S. 63, 75 (2003)].
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. Cf. Felker v. Turpin, 518 U.S. 651, 664 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further.... As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington, 562 U.S. at 102-03 (parallel citations omitted) (emphasis added).

Finally, this Court is mindful that in all habeas cases brought pursuant to 28 U.S.C. § 2254, the federal court must presume that the state court's factual determinations are correct and the petitioner has

---

application of, the [Supreme] Court's precedent." Rountree v. Balicki, 640 F.3d 530, 537 (3d Cir. 2011) (citing Kane v. Garcia Espitia, 546 U.S. 9, 10-11 (2005)).

the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Under § 2254(d)(2)'s "unreasonable determination of facts" clause, the test:

> is whether the petitioner has demonstrated by "clear and convincing evidence," § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record. See Rice v. Collins, 546 U.S. 333, 338-339 (2006) ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'") (quoting § 2254(e)(1)) (citing Miller-El v. Dretke, 545 U.S. 231, 240 (2005)); see also Simmons v. Beard, 590 F.3d 223, 231 (3d Cir. 2009) ("Under the § 2254 standard, a district court is bound to presume that the state court's factual findings are correct, with the burden on the petitioner to rebut those findings by clear and convincing evidence."). Importantly, the evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication. Cullen v. Pinholster, — U.S. — [ ], 131 S. Ct. 1388, 1401-03 (2011).

Rountree, 640 F.3d at 537-38 (parallel citations omitted).

### C.    Discussion

#### 1.    Claims 1 through 3: Due Process Claims

In Claims 1, 2 and 3, Petitioner contends that the trial court committed errors so severe they each amounted to a violation of his rights under the Fourteenth Amendment's Due Process Clause. He raised these claims on direct appeal and the Superior Court denied each of them on the merits in Vargas I.

##### (a)    Claim 1

In denying Claim 1, in which Petitioner challenges that the trial court's decision to deny the defense request to conduct an independent medical evaluation of M.L., the Superior Court held that any error was harmless. It explained:

> The alleged assaults occurred at least seven years prior, and appellant's medical expert was provided with colposcopic photographs taken by Dr. Schober. Appellant does not specify how Dr. Guertin's testimony would have changed had he been afforded the opportunity for an in-person physical examination of the victim. As the Commonwealth states, Dr. Guertin gave no indication that his review was hampered by using the

photographs as opposed to conducting an actual physical examination. (Commonwealth's brief at 4-5.)

        Furthermore, the trial court cautioned the Commonwealth not to exploit the fact that appellant's expert was denied an [independent medical examination].

Vargas I, No. 1628 WDA 2008, slip op. at 3-4 (citing 5/12/08 Tr. at 3).

Because this federal habeas case is being decided on collateral review and the Superior Court adjudicated Claim 1 on direct review, a brief discussion about the interplay between AEDPA and the different harmless error standards that apply on direct and collateral review is necessary. "The test for whether a federal constitutional error was harmless depends on the procedural posture of the case." Davis v. Ayala, — U.S. — , 135 S.Ct. 2187, 2197 (2015). When a decision is issued on direct appeal (such as Vargas I), the standard for harmless error is that which is articulated in Chapman v. California, 386 U.S. 18 (1967), which provides that "'before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.'" Ayala, 135 S.Ct. at 2197 (quoting Chapman, 386 U.S. at 24). In contrast, the applicable harmless error evaluation that applies in a collateral case such as this habeas case is "the more forgiving" one that is set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993). Brecht requires that relief is proper only if the court has "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict.'" O'Neal v. McAninch, 513 U.S. 432, 436 (1995) (quoting Brecht, 507 U.S. at 627).

In Ayala, the Supreme Court made clear that a federal court adjudicating a habeas petition does not need to "'formal[ly]' apply both" Brecht and AEDPA's analysis of whether the state court's direct appeal decision was "contrary to, or an unreasonable application of " Chapman. Ayala, 135 S.Ct. at 2198 (quoting Fry v. Pliler, 551 U.S 112, 119-20 (2007)). It explained that "a prisoner who seeks federal

habeas corpus relief must satisfy <u>Brecht</u>, and if the state court adjudicated his claim on the merits, the

<u>Brecht</u> test subsumes the limitations imposed by AEDPA." <u>Id.</u> (citing <u>Fry</u>, 551 U.S at 119-20).

This Court should not have "grave doubt about whether" the trial court's decision to deny the

defense's request to conduct an independent medical evaluation of M.L. "had 'substantial and injurious

effect or influence'" on the jury's verdict. <u>O'Neal</u>, 513 U.S. at 436 (quoting <u>Brecht</u>, 507 U.S. at 627).

Accordingly, the alleged trial court error in Claim 1 was harmless under <u>Brecht</u> and Petitioner has not

overcome AEDPA's standard of review under §2254(d). Therefore, he is not entitled to relief on

Claim 1.

> **(b)     Claim 2**

In denying Claim 2, in which Petitioner challenges the trial court's decision to deny his request

for a continuance of his May 2008 trial date, the Superior Court held:

> [A]lthough appellant maintains that counsel did not have adequate opportunity to review the record in preparation for appellant's re-trial (appellant's brief at 15), this is not accurate. The transcripts were completed by April 15, 2008, and appellant's re-trial commenced on May 13, 2008. Therefore, appellant had almost a full month to review the transcripts prior to trial. (Trial court opinion, 1/26/09 at 8.) Although appellant is correct that the charges were very serious, the case was not particularly complex, and the first trial lasted only four days. (<u>Id.</u>) We find the trial court did not abuse its discretion in denying a continuance on this basis.
> Appellant also contends that a continuance should have been granted because Dr. Guertin practices in Michigan and was unavailable for all but the first three days of the May 2008 trial term, necessitating his appearance by video conferencing and out-of-turn, *i.e.*, prior to the close of the Commonwealth's case-in-chief…. [A]ppellant has failed to show an abuse of discretion in directing Dr. Guertin to appear out-of-turn. "We have previously stated that the order of presentation of evidence is a matter of sound discretion for the trial court." <u>Commonwealth v. Mangini</u>, 478 Pa. 147, 161 ,386 A.2d 482, 489 (1978) (citations omitted). As the trial court observes, this case had already been tried once and was continued for two months to allow new counsel to prepare for re-trial. The next available trial term was not until July. (Trial court opinion, 1/26/09 at 9.)
> Furthermore, appellant has failed to demonstrate how he was prejudiced by presenting Dr. Guertin's testimony by way of video conferencing and out-of-turn. As the trial court states, counsel for appellant was aware from Judge DiSantis's April 17, 2008 order that Dr. Guertin might be called out-of-turn, and they had approximately one month to prepare for that contingency. (<u>Id.</u>) It is clear from Dr. Guertin's testimony at the second

trial that he was familiar with Dr. Schober's conclusions regarding the alleged injuries to M.L. (Id.) In addition, the trial court specifically provided that defense counsel could detail the facts for the jury in their opening statement, since the Commonwealth's case might not be fully developed by the time Dr. Guertin was called to the stand[.]

Vargas I, No. 1628 WDA 2008, slip op. at 7-9 (footnotes omitted).

There is no basis for this Court to disturb the Superior Court's decision. In Ungar v. Sarafite, 376 U.S. 575 (1964), the case upon which Petitioner relies, the Supreme Court held:

The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Avery v. Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. Nilva v. United States, 352 U.S. 385, 77 S.Ct. 431, 1 L.Ed.2d 415; Torres v. United States, 270 F.2d 252 (C.A.9th Cir.); cf. United States v. Arlen, 252 F.2d 491 (C.A.2d Cir.).

376 U.S. at 589-90. Petitioner has not established that the trial court's decision to deny his request for a continuance of his May 2008 trial date violated his due process rights, let alone that the Superior Court's adjudication of Claim 2 was " contrary to, or … an unreasonable application of" Ungar or any other "clearly established Federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). In addition, if Petitioner had established a due process violation – and he has not – the violation was harmless under Brecht and the Superior Court's harmless error analysis cannot be disturb under AEDPA's standard of review.

For all of these reasons, Petitioner is not entitled to relief on Claim 2.

**(c)     Claim 3**

In Claim 3, the Petitioner challenges the trial court's decision to permit the introduction of testimony of prior acts of violence on his part against his wife and stepchildren. The trial court permitted the prosecution to admit the evidence to explain why M.L. delayed in reporting Petitioner's abuse. (See 1/15/08 Tr. at 3-20; 5/12/08 Tr. at 6-7). In concluding that the trial court did not err, the Superior Court first explained that under Pennsylvania law, evidence of prior bad acts committed by a defendant is admissible, among other reasons, "*to show that the defendant has used the prior bad acts to threaten the victim*; and in situations where the bad acts were part of a chain or sequence of events that formed the history of the case and were part of its natural development." Vargas I, No. 1628 WDA 2008, slip op. at 9 (emphasis in original) (quoting Commonwealth v. Page, 965 A.2d 1212, 1219 (Pa.Super.Ct. 2009), which quoted Commonwealth v. Reid, 811 A.2d 530, 549 (Pa. 2002) and Pa.R.E. 404(b)(2), (b)(3)). The Superior Court then held:

> We find that this [prior bad act] testimony was relevant to explain why M.L. was afraid of appellant and waited so long to report the abuse. "The Supreme Court of Pennsylvania has recognized that a delay in reporting abuse can affect evaluation of the victim's credibility. 'Revealing the circumstances surrounding an incident of sexual abuse, and the reasons for the delay, enables the factfinder to more accurately assess the victim's credibility.'" Page, 695 A.2d at 1220, quoting Commonwealth v. Dillon, 592 Pa. 351, __, 925 A.2d 131, 139 (2007) (additional citation omitted).
> Furthermore, we determine the evidence was not unduly prejudicial to appellant and did not prevent the jury from impartially weighing the evidence.
>
> > Evidence will not be prohibited merely because it is harmful to the defendant. This court has stated that it is not 'required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged.'
>
> Id., quoting Dillon, supra at ___ , 925 A.2d at 141 (citation omitted). "[E]xclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case." Id., quoting Commonwealth v. Owens, 929 A.2d 1187, 1191 (Pa.Super. 2007) (citation omitted).

While the testimony about appellant's physical abuse and threats directed towards M.L. and her mother was undoubtedly damaging, it did not "cross the line in terms of quantity or quality of the evidence" sufficient to "rouse a jury to overmastering hostility." Id. at 1221. The evidence was highly relevant to explain why M.L. did not come forward sooner, and its probative value was not outweighed by potential prejudice. In addition, we note that after both M.L's and Mother's testimonies, the trial court gave an appropriate limiting instruction to the jury. (Notes of testimony, 5/13/08 at 53-54; 5/14/08 at 26; trial court opinion, 1/26/09 at 10-11.) See Page, 965 A.2d at 1221 ("such evidence (of prior criminal acts) must be accompanied by a cautionary instruction which fully and carefully explains to the jury the limited purposes for which that evidence has been admitted") (quotation marks and citations omitted).

Vargas I, No. 1628 WDA 2008, slip op. at 12-13.

Petitioner argues that the state court erred in ruling that the prior bad act evidence was admissible under the state rules of evidence. The state court's decision regarding the admissibility of evidence under the Pennsylvania Rules of Evidence, however, is unreviewable by this court. Estelle, 502 U.S. at 67-68 (federal courts may not "reexamine state court determination on state-law questions"). Of course, "the erroneous admission of evidence that is relevant, but excessively inflammatory, might rise to the level of a" due process violation. Lesko v. Owens, 881 F.2d 44, 51 (3d Cir. 1989) (citations omitted). But in order to be entitled to relief on Claim 3, Petitioner must overcome AEDPA's standard of review. He has not met his burden. Specifically, he has not demonstrated that the Superior Court applied "a rule that contradicts the governing law set forth in [United States Supreme Court] cases," Williams, 529 U.S. at 405, or that it confronted "a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrive[d] at a result different from [Supreme Court] precedent," id. at 406. Therefore, Petitioner has not satisfied the "contrary to" clause of § 2254(d)(1). Nor has Petitioner demonstrated that the Superior Court's adjudication "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103. Therefore, Petitioner has not satisfied the "unreasonable application" clause of § 2254(d)(1). And, finally, there is no basis to conclude that Petitioner has

overcome the deference this Court must accord to state court factual determinations under § 2254(d)(2) and (e)(1). Therefore, he is not entitled to relief on Claim 3.

Additionally, the Superior Court concluded that the prejudicial effect of the prior bad act testimony was tempered by the trial court when it twice cautioned the jury that it was introduced only to explain why M.L. waited to report the sexual abuse and that it was not to be considered for any other purpose. (5/13/08 Trial Tr. at 53-54; 5/14/08 Trial Tr. at 26). Because this Court should not have "grave doubt about whether" the trial court's decision to permit the prosecution to introduce prior bad act testimony for that limited purpose "had 'substantial and injurious effect or influence'" on the jury's verdict, O'Neal, 513 U.S. at 436 (quoting Brecht, 507 U.S. at 627), the alleged trial court error in Claim 3 was harmless under Brecht and Petitioner has not overcome AEDPA's standard of review under §2254(d). Therefore, for these additional reasons he is not entitled to relief on Claim 3.

### 2.    Claim 4: Ineffective Assistance of Counsel

In Claim 4(a) through (c), Petitioner contends that his right to effective assistance of counsel was violated. Such claims are governed by the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail under Strickland, Petitioner has the burden of proving that his counsel's "representation fell below an objective standard of reasonableness." 466 U.S. at 688. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687. The Supreme Court emphasized that "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[.]'" Burt v. Titlow, — U.S. —, 134 S.Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at 690). See also Harrington, 562 U.S. at 104 ("A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the

'wide range' of reasonable professional assistance.") (quoting <u>Strickland</u>, 466 U.S. at 689). <u>Strickland</u> also requires that Petitioner demonstrate that he was prejudiced by his counsel's alleged deficient performance. This places the burden on him to establish "that there is a reasonable probability that, but for counsel's unprofessional errors," the result of his trial or direct appeal "would have been different." <u>Strickland</u>, 466 U.S. at 694. <u>See also</u> <u>Brown v. Wenerowicz</u>, 663 F.3d 619, 630 (3d Cir. 2011) ("it is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Counsel's errors must be so serious as to deprive the defendant of a fair trial. The likelihood of a different result must be substantial, not just conceivable.") (internal quotations and citations omitted)

### (a)    Claim 4(a)

In Claim 4(a), Petitioner contends that his trial counsel failed to properly object to the admission of M.L.'s recorded statement on the grounds that its admission violated his rights under the Confrontation Clause as enunciated in <u>Crawford v. Washington</u>, 541 U.S. 36 (2004). The Superior Court denied this claim because M.L. testified at the trial and was subject to cross-examination. <u>Vargas III</u>, No. 504 WDA 2013, slip op. at 5; <u>Vargas II</u>, No. 2558-2006, slip op. at 3. Therefore, the admission of her recorded statement did not conflict with protections to right of confrontation set forth in <u>Crawford</u>. The Superior Court's decision was not "contrary to, or … an unreasonable application of[,]" 28 U.S.C. § 2254(d)(1), <u>Crawford</u>, which reiterated that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints on the use of his prior testimony statements[,]" 541 U.S. at 59 n.9 (citing <u>California v. Green</u>, 399 U.S. 149, 162 (1970)), and explained that "[t]he Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." <u>Id.</u>

There also can be no dispute that the Superior Court's decision was not "contrary to," 28 U.S.C. § 2254(d)(1), <u>Strickland</u>, since the state court applied the <u>Strickland</u> standard when it evaluated

Claim 4(a).[3] Williams, 529 U.S. at 406 ("a run-of-the mill state-court decision applying the correct legal rule from [Supreme Court] cases [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause."). Moreover, because counsel cannot be found to be ineffective for failing to raise a meritless claim, Strickland, 466 U.S. at 691, the Superior Court's determination that trial counsel was not ineffective for raising a Crawford challenge to the admissibility of M.L.'s statement was not an "unreasonable application" of Strickland either and, therefore, withstands review under that clause of § 2254(d)(1). Additionally, Petitioner has not overcome his burden of establishing that the Superior Court's decision to deny this claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). For all of these reasons, Petitioner is not entitled to relief on Claim 4(a).

### (b)    Claim 4(b)

Petitioner contends that his trial counsel were ineffective because they failed to cross-examine M.L. concerning her recorded statement. The PCRA court discussed this claim in depth and the Superior Court adopted its reasoning. It held:

> [Petitioner argues that he] was denied effective assistance at trial[ ] because trial counsel did not *know* he could cross examine [M.L.] about the recorded statement. PCRA counsel supports the argument by citing to trial counsel's claim that he had no chance to cross-examine the victim about her statements on the tape. (Jury Trial Tr. 67:9-12, May 14, 2008.) This exchange does not establish that both Attorney Sloane and Attorney Gilmore were unaware of their options to challenge what the victim said on the tape. Counsel could have confronted and cross examined M.L. with the recorded statement either when M.L. was initially on the stand or, alternatively, counsel could have asked to have M.L. recalled for further examination after the statement was played.[8] Finally, since this was a retrial after a hung jury – and the transcripts of the prior trial was transcribed

---

[3]     Pennsylvania courts apply the Strickland standard when evaluating ineffective assistance of counsel claims. Commonwealth v. Pierce, 527 A.2d 973, 976-77 (Pa. 1987); Commonwealth v. Kimball, 724 A.2d 326 (Pa. 1999). Although Pennsylvania courts typically articulate a three-prong test for gauging ineffective assistance claims and Strickland sets forth its test in two prongs, the legal evaluation is the same, and the differences merely reflect a stylistic choice on the part of state courts.

about a month before retrial – counsel could have sought to admit relevant portions of M.L.'s examination at the first trial or the preliminary hearing.

[8.] Either choice had substantial risks. Preemptive cross-examination might have exposed material that the Commonwealth might, ultimately, choose not to admit. Recall could afford the witness and opportunity to explain any alleged inconsistencies. It was a sound course to leave these matters for argument in closing.

PCRA counsel makes three unsupported assumptions: (1) that trial counsel were unaware of their options; (2) that trial counsel was ineffective because they did not pursue other alternative actions, and (3) that [Petitioner] was prejudiced by this course of action, but offers no proof in support of the contention. The decision of whether, and to what extent, to cross-examine a child of tender year, alleged to be the victim of sexual misconduct by the defendant, is one of the most difficult challenges facing a trial lawyer. A vigorous and slashing cross-examination is rarely appropriate; the general goal is to undermine the consistency of the child's story and to suggest the child may have been influenced to exaggerate or fabricate – leaving much to final argument. Both of these strategies were undertaken by trial counsel during cross-examination and followed through in closing argument.

It is noteworthy that this same strategy was pursed by differ[ent] counsel at both the first and second trials. In neither trial did trial counsel seek to recall the child for further examination after the recorded statement was played. *Compare* (Jury Trial Tr. 79:9-108:9, Jan. 15, 2008) with (Jury Trial Tr. 54:16-72:7, May 13, 2008). This Court notes that the same material was available for closing argument at each trial. *See* (Jury Trial Tr. 73:12-95:13, Jan. 17, 2008); (Jury Trial Tr. 20:7-69:7, May 15, 2008).

The record reflects counsel cross-examined M.L. at trial. During closing argument the defense seized upon claimed inconsistencies as undercutting the child's testimony. It appears that trial counsel did what could be done and what was required to be done. Cross-examination of a child victim is fraught with peril and admits of no bright-line rules. Each question involves risk; the advocate treads the cliff's edge lest he be seen as badgering. On the record, faced with this general claim, there is not support for a claim of ineffectiveness in the cross-examination of M.L.

Vargas II, No. 2558-2006, slip op. at 3-5 (emphasis in original, additional footnote omitted).

As set forth above, because the state court applied the Strickland standard, its decision to deny Claim 4(b) was not "contrary to" Strickland. 28 U.S.C. § 2254(d)(1). Moreover, because its adjudication was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement[,]" Harrington, 562 U.S. at 102-03, its adjudication was not an "unreasonable application of," 28 U.S.C. § 2254(d)(1), Strickland either. And,

finally, Petitioner has not overcome his burden of establishing that the state court's decision to deny this claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Therefore, Petitioner is not entitled to relief on Claim 4(b).

### (c)    Claim 4(c)

Petitioner asserts that his trial counsel were ineffective for "fail[ing] to properly object and/or raise a challenge on direct appeal … based upon the misleading and prejudicial photographs as utilized by the Commonwealth's expert[.]" [ECF No. 1 at 18]. The Superior Court held that this claim was waived because Petitioner failed to raise it in his Statement of Errors Complained of on Appeal in accordance with Rule 1925 of the Pennsylvania Rules of Appellate Procedure. <u>Vargas III</u>, No. 504 WDA 2013, slip op. at 4.

Respondents contend that, based upon the Superior Court's holding, this Court must conclude that Petitioner procedurally defaulted[4] Claim 4(c) for the purposes of federal habeas review. They are correct, a point that Petitioner concedes in his reply. [ECF No. 15-1 at 31 ("Petitioner recognizes that, for purposes of review by this Court, said claim may, in fact, be procedurally defaulted.")]. Accordingly, Claim 4(c) is procedurally defaulted and must be denied for that reason.

### 3.    Claim 5 – Newly Discovered Evidence Claim

In his final claim, Petitioner contends that the PCRA court erred when it denied his claim that he was entitled to be retried because of newly discovered evidence that discredited Rhonda Henderson. The

---

[4]    When the state court denied a federal constitutional claim because the petitioner failed to raise it in accordance with an "adequate" and "independent" state procedural rule, the procedural default doctrine prohibits a federal habeas court from reviewing that claim. <u>See</u>, <u>e.g.</u>, <u>Gray v. Netherland</u>, 518 U.S. 152, 162 (1996); <u>Coleman v. Thompson</u>, 501 U.S. 722, 732 (1991).

Superior Court denied this claim in <u>Vargas III</u> and in so doing it adopted the reasoning of the PCRA

court, which held:

> Recently the work product of a forensic nurse, Rhonda Henderson, has been called into question. In several instances, Nurse Henderson's work in other cases has been reviewed by independent experts, selected by the Commonwealth; these reviewing experts indicated that Nurse Henderson's claimed observations of injury to children's genitalia were not supported by objective physical evidence. Cases in which Nurse Henderson played a substantial role have been subject to review by the Court of Common Pleas in Erie County, Pennsylvania, to determine whether the convictions in those cases should be set aside.
>
> In this case, Nurse Henderson neither played a role as a witness nor provided an expert report. The Commonwealth's expert in this case was Dr. Justine Schober, who testified to her findings concerning the child's genitalia. After her initial expert report was authored, and after her findings were documented, she was directed by the court to make photographs of those findings so that the expert for the Defense would have an opportunity to review the photographs and to determine if he thought there was objective evidence of injuries to the child's genitalia. Nurse Henderson assisted Dr. Schober in photographing injuries to the victim's genitalia – injuries that Dr. Schober had already reported before Nurse Henderson's involvement. This Court finds that Nurse Henderson's role was minimal and always under the direct supervision of Dr. Schober.
>
> The PCRA counsel argues that since Nurse Henderson is under a cloud, and since she had a chance to touch the victim, that the Court needs to have a hearing to explore if Nurse Henderson, in any way, positioned the victim to affect the quality of the photographic evidence. This argument is speculation. First, Dr. Schober's findings of damage to the child's genitalia in her initial report predated any involvement of Nurse Henderson. Second, the photographs were only to provide visual evidence to confirm Dr. Schober's initial findings. To suggest that somehow Nurse Henderson's minimal involvement, under the supervision of Dr. Schober, in positioning the child affects the reliability of photographic evidence is unsubstantiated speculation.
>
> Our Supreme Court has explained that in order to obtain PCRA relief on exculpatory after-discovered evidence grounds, a Petitioner must show that the evidence: "(1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a new witness; and (4) would likely result in a different verdict if a new trial were granted." <u>Commonwealth v. Pagan</u>, 950 A.2d 270, 292 (Pa. 2008). Petitioner must demonstrate each of these factors by a preponderance of the evidence. <u>Commonwealth v. Padillas</u>, 997 A.2d 356, 363 (Pa.Super. 2010). Here, [Petitioner] has failed to meet his burden.
>
> Nurse Henderson's involvement in this case was minimal. The cloud over Nurse Henderson as an expert has nothing to do with her role in this case or the integrity of the evidence.

<u>Vargas II</u>, No. 2558-2006, slip op. at 7-9.

Petitioner is not entitled to habeas relief on Claim 5. His claim is that the *PCRA court* violated his due process rights because it did not "grant [him] a hearing to explore if Nurse Henderson, in any way, positioned the victim to affect the quality of the photographic evidence[.]" [ECF No. 15-1 at 42]. This contention does not entitle him to habeas relief because "the federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; *what occurred in the petitioner's collateral [PCRA] proceeding does not enter into the habeas calculation*." Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998) (internal citations omitted) (emphasis added). See also Lambert v. Blackwell, 387 F.3d 210, 247 (3d Cir. 2004) ("[A]lleged errors in collateral proceedings are not a proper basis for habeas relief from the original conviction.").

To the extent that Petitioner is contending that he is entitled to habeas relief based upon the newly discovered evidence regarding Nurse Henderson, that claim also is not cognizable under the federal habeas statute.[5] That is because "[a] freestanding claim of actual innocence in a non-capital case based on newly discovered evidence is not a ground for habeas corpus relief." BRIAN R. MEANS, FEDERAL HABEAS MANUAL § 1:60, WestlawNext (database updated June 2015) (citing Herrera v. Collins, 506 U.S. 390 (1993) and additional citations omitted). See also Fielder v. Varner, 379 F.3d 113, 122 (3d Cir. 2004) ("It has long been recognized that '[c]laims of actual innocence based on newly discovered evidence' are never grounds for 'federal habeas relief absent an independent constitutional violation.'" (quoting Herrera, 506 U.S. at 400)); Albrecht, 485 F.3d at 121-22. But see Han Tak Lee v.

---

[5]     When Petitioner presented his allegations regarding Nurse Henderson to the state court, he raised it under a provision of the PCRA *that does not have a counterpart in the federal habeas statute*. The PCRA provides that a prisoner is entitled to relief if he proves that his conviction or sentence resulted from "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S. § 9543(a)(2)(vi). See also Albrecht v. Horn, 485 F.3d 103, 123 (3d Cir. 2007) (describing this provision of the PCRA as "the provision of the state post-conviction relief act dealing with claims of innocence based on after discovered evidence."). In contrast, as discussed herein, a stand-alone claim of actual innocence is not cognizable under the federal habeas statute.

Glunt, 667 F.3d 397 (3d Cir. 2012) (where the petitioner's claims were based on an alleged due process violation, not a claim of actual innocence). However, if Petitioner was raising a claim that could be reviewed in a federal habeas proceeding, this Court would not disturb the state court's adjudication of it because, as the state court held, Nurse Henderson's involvement in his case was minimal.

### D.      Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. Applying those standards here, jurists of reason would not find it debatable whether each of Petitioner's claims should be denied. Accordingly, a certificate of appealability should be denied.

### III.      CONCLUSION

For the foregoing reasons, it is respectfully recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed fourteen (14) days from the date of this Order to file objections to this Report and Recommendation. Failure to do so will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).


/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: February 24, 2016

cc:     The Honorable Cathy Bissoon
        United States District Judge

21